WETHERELL, J.,
concurring in result only.
I concur in the decision to affirm the order committing Appellant as a sexually violent predator under the Jimmy Ryce Act,[7] but I agree with Judge Rowe that we have to recede from Taylor to reach this result. I write separately to address the various contentions that Taylor is distinguishable from this case.
The majority asserts that Taylor is distinguishable because, unlike the respondent in Taylor, Appellant was in “lawful custody” when the amended petition was filed since there was a stay in effect at the time precluding his release. But, as explained by Judge Rowe, the same was true in Taylor.
Judge Padovano’s concurring opinion expands on this assertion by implying that the State’s appeal of the dismissal order in Taylor was a pretext to keep the respondent in custody until the State filed its amended petition. This contention finds no support in the Taylor opinion. The court did not hold in Taylor that the State’s failure to prosecute the appeal was the reason the respondent was not in lawful custody when the amended petition was filed; rather, the court held that the respondent was not in lawful custody when the amended petition was filed because, under Osborne, he was entitled to immediate release upon his motion to dismiss *1214 being granted. See Taylor, 65 So.3d at 536 (“In summary, we conclude that Mr. Taylor was entitled to be released when the court dismissed the original petition .The dismissal without prejudice left open the possibility of a new commitment proceeding in the future but it did not give the state the right to refile the petition in the commitment proceeding in this case. For these reasons, we hold that Mr. Taylor was not in lawful custody when the amended petition for involuntary commitment was filed and that the trial court is without jurisdiction to proceed on the amended petition.”) (emphasis added).
Furthermore, even if the appeal filed in Taylor was merely a pretext to give the State time to file an amended petition while the automatic stay was in effect (thereby rendering Appellant’s custody unlawful “during the brief period of time in which the state’s appeal was pending” as Judge Padovano contends), the same is true of the stay entered by the trial court in this case. The record reflects that the trial court stayed Appellant’s release for 10 days in order to give the State an opportunity to appeal the dismissal order, but the prosecutor made clear at the hearing on the motion to dismiss that he did not intend to appeal the dismissal order and instead was going to serve Appellant with an amended petition before his release from the commitment center, which is precisely what the prosecutor did.
Judge Padovano’s concurring opinion also contends that Taylor is distinguishable because “the motion to dismiss in Taylor was properly granted whereas the motion to dismiss in this ease should have been denied.” The Taylor opinion provides no support for this assertion; the opinion did not address the merits of the dismissal one way or the other because that issue was not before the court, a point I emphasized in my concurring opinion in Taylor. See id. at 537 (Wetherell, J., concurring) (“I do not read the majority opinion to approve the trial court’s dismissal of the original petition.... Indeed, the propriety of that decision is not squarely before the court because the state did not pursue its appeal of the dismissal order.”).
Not only was this issue not decided in Taylor, but the Florida Supreme Court’s recent Morel decision undermines any view that the dismissal order in Taylor was unquestionably correct.[8] Like the respondent in Morel, the respondent in Taylor “agreed to an indefinite waiver of the statutory trial period for strategic reasons and then did not object to his continued confinement for nearly five years before filing a motion to dismiss.”[9] Id. at 537 n. *1215 2 (Wetherell, J., concurring); accord Morel, 84 So.3d at 247 (rejecting argument that respondent was entitled to dismissal because the record reflected that he “acquiesced to the indefinite postponement of trial and never once sought to recapture his right to be brought to trial in a timely manner”). Thus, even if it was debatable at the time Taylor was decided whether the original petition in that case was properly dismissed, it is now clear based on Morel that the dismissal order in Taylor was erroneous, just as it was in this case.
The majority and Judge Padovano make a strong case that the trial court erred in granting Appellant’s motion to dismiss. However, as was the case in Taylor, the propriety of the trial court’s ruling on the motion to dismiss is not before the court because the State did not appeal the dismissal order.[10] Thus, even if the trial court erred in granting Appellant’s motion to dismiss, we cannot apply the “invited error” doctrine to affirm the commitment order in this case without receding from Taylor.
*1216 The invited error doctrine is particularly inapplicable here because Appellant did not invite the error he challenges on appeal through his actions preceding the motion to dismiss, as the majority contends. The only ruling that Appellant asked the trial court to make that could be subject to an invited error analysis is the court’s ruling on his motion to dismiss. The motion only asked the trial court to dismiss the original petition under Osborne because Appellant had not been brought to trial within the statutory time period; it did not ask the trial court to allow the State to file and proceed on an amended petition in response to the dismissal order, which is the error that Appellant challenges on appeal.[11]
The only conceivable way that Appellant could be viewed as having invited the error he challenges on appeal is by answering the amended petition and proceeding to trial. However, if Taylor was correct that the dismissal of the original petition under Osborne deprives the trial court of jurisdiction to proceed on an amended petition unless and until the respondent is in custody on a subsequent offense, the invited error doctrine cannot be applied here because the effect of doing so would be to confer jurisdiction on the trial court that it does not have. See Akins v. State, 691 So.2d 587, 589 (Fla. 1st DCA 1997) (holding that, where the trial court lacked jurisdiction because the indictment charged a nonexistent crime and the parties’ stipulation to amend the indictment to charge a different crime was ineffective, “[a]n ‘invited error’ analysis is inapplicable ... because jurisdiction cannot be conferred on the court by agreement of the parties”); Evans v. State, 647 So.2d 180 (Fla. 1st DCA 1994) (“It is well settled that [a] defendant cannot confer jurisdiction on the trial court by waiver, acquiescence, estop-pel, or consent since jurisdiction is established solely by general law.”) (quoting White v. State, 404 So.2d 804, 805 (Fla. 2d DCA 1981)).
Taylor made clear that “[t]he state was entitled to appeal [the dismissal] order and perhaps to have the respondent held in custody during the appeal, but the state was not entitled to cure the failure to meet the time limit simply by filing another version of the same petition.” 65 So.3d at 536; see also id. (“The dismissal of the original petition without prejudice left open the possibility of a new commitment proceeding in the future but it did not give the state the right to refile the petition in the commitment proceeding in this case.”). Judge Padovano reiterates this very point in his concurring opinion when he asserts that “the state has no authority to file a new or amended petition in the same proceeding once the original petition has been dismissed for failure to meet the statutory deadline for conducting a trial.” The majority, however, approves precisely what the court held to be impermissible in Taylor — the State’s refiling of a nearly identical amended petition in the same proceeding after the original petition was dismissed under Osborne.
It makes no difference, as Judge Pado-vano contends, that Appellant would have been in lawful custody under the original petition if the trial court had denied the motion to dismiss “as it should have.” The trial court did not deny the motion and, although it could have, the State did not appeal the dismissal order. Had the State appealed and had this court reversed, the State could have proceeded on the original petition. See Taylor, 65 So.3d at 536. But *1217 because none of this happened, Appellant’s commitment cannot be justified based on the original petition. Nor can a ruling not made by the trial court be the basis to conclude that Appellant was in lawful custody at the time the amended petition was filed.
That said, because the present procedural posture of this case is similar to Boatman, there is no question that if we were writing on a blank slate, we could simply affirm the commitment order in this case on the authority of Boatman. In that ease, the Florida Supreme Court held that when a Jimmy Ryce Act respondent waits until after trial to seek review of the State’s failure to bring him to trial within 80 days, the respondent is not entitled to release unless he can demonstrate that the fairness of the trial was impacted by the delay. See Boatman, 77 So.3d at 1251. Although Boatman involved a situation where the trial court continued the trial beyond the 30-day period over the respondent’s objection without a proper legal basis for doing so, id. at 1245-46, there is no reason that the rule announced in Boatman should not also apply where, as here, the trial court grants the respondent’s motion to dismiss under Osborne but then, without any objection from the respondent, the case proceeds to trial on the amended petition filed by the State in response to the dismissal order. In both situations, by the time appellate review is sought, the relief to which the respondent is entitled under Osborne is no longer available.
The problem, however, is that we are not writing on a blank slate. Taylor held that the trial court lacks jurisdiction to proceed on an amended petition filed after the order dismissing the original petition under Osborne unless and until the respondent is in custody on a subsequent offense. The rule announced in Boatman cannot overcome the jurisdictional defect resulting from the holding in Taylor simply by characterizing the decision as “outlier.”[12] Thus, -without receding from Taylor, the court cannot rely on Boatman to affirm to commitment order in this case.
That, however, is precisely what the majority opinion purports to do through its statement that this court will not reverse “a commitment order entered under the Jimmy Ryce Act after trial on account of a delay in the start of the trial ... in the absence of any claim or ‘demonstration of an impact on the fairness of the trial itself’ (quoting Boatman). Because this statement and the decision in this case cannot be squared with Taylor, it follows that despite what the majority and Judge Pado-vano claim, the court has implicitly receded from Taylor in this case.
The en banc court is, of course, free to recede from Taylor. But it should do so explicitly in order to provide clear guidance to the Bench and Bar. Here, by leaving the erroneous impression that Taylor remains good law, the majority confuses the law rather than clarifying it. This result is unfortunate, particularly after the *1218 court took the extraordinary step of convening en banc to decide this case.
For these reasons, I concur in result only.

. There is no question that Appellant is precisely the type of individual the Jimmy Ryce Act is intended to involuntarily commit for treatment in order to protect the public. He was convicted of molesting his cousins, ages 7 and 9, and he admitted to the multi-disciplin-ary team psychologists who evaluated him in September 2009 before his scheduled release from juvenile detention that he "like[s] having sex with children” and that he continues to have sexually deviant fantasies about children. He candidly acknowledged at trial that he needs additional sex offender treatment and he testified that there is a 40 percent chance that he will reoffend, which is only slightly better than what he told the psychologists in September 2009, when he rated his likelihood of committing a sexual offense in the future as a ”5 to 6, maybe higher” on a scale of 1 to 10.

. The assertion in Judge Padovano’s concurring opinion that Mr. Taylor’s ”entitle[ment] to a dismissal was never in question” is refuted by the fact that the trial court initially denied the motion to dismiss on the basis that the respondent had implicitly waived his right to a trial within the statutory period. See Taylor, 65 So.3d at 533. Also, I specifically stated in my concurring opinion that "I disagree with the trial court that [this court’s decision in] Boatman compelled dismissal of the original petition.” Id. at 537 (Wetherell, J., concurring) (noting that ”[t]here is persuasive authority suggesting that dismissal is not required under these circumstances”).

. Contrary to the assertion in Judge Padova-no’s concurring opinion, this statement is an accurate summary of the record in Taylor. Although the record did not reflect why the trial in Taylor was not set within 30 days after the December 2002 adversarial probable cause hearing in accordance with the parties' "informal off-the-record agreement,” the respondent did not raise any objection when the case was finally set for trial on September 26, 2005. That trial date was continued at the State's request because one of its evaluators changed his opinion as to whether the respondent should be committed. The respondent, through his attorney, agreed to the continuance at a hearing held on September 15, *1215 2005. There, in response to the trial court’s question as to whether the case should be reset for trial at that time, the respondent’s attorney stated that "we should probably just continue it and then [the prosecutor] and I can get together and figure out the course we’re going to take on this one.” The prosecutor agreed, and the trial court granted the continuance through a notation on the motion stating that the trial was "to be set upon proper motion.” This ruling predated the 2006 amendment to section 394.916(2), Florida Statutes, that limited continuances to "not more than 120 days” absent a manifest injustice and it also predated the rules adopted by the Florida Supreme Court in 2009 that require a new trial date to be set when a continuance is granted. The trial court’s notation that the trial was "to be set upon proper motion” is consistent with the prosecutor’s testimony at the 2010 evidentiary hearing on the respondent's motion to dismiss that it was her understanding that respondent's attorney agreed to an open-ended waiver of the statutory trial period and would let her know when the case should be reset for trial. At no point prior to filing his motion to dismiss in February 2010 did the respondent request that the case be set for trial and, as noted by the State in its response to the petition for writ of prohibition in Taylor, during this five-year period, the respondent "took actions typical of someone defending against commitment, such as seeking discovery; responding to State discovery; and noticing/taking depositions.” Thus, Judge Makar’s concurring opinion is incorrect when it states that the respondent in Taylor only agreed to the delays "early on in his civil commitment proceeding” and that he did not acquiesce in "an indefinite delay and the five-year gap” preceding the filing of the motion to dismiss and the petition for writ of prohibition. Additionally, the fact that the respondent in Taylor did not personally execute a waiver or agree to a continuance on the record is no different than this case where it was Appellant’s attorney who requested a continuance in November 2009 in order to have Appellant evaluated by another doctor. In fact, after the trial court told Appellant that it would not be feasible to get him evaluated and have the case set for trial within 30 days, Appellant effectively objected to the continuance by telling the trial court “[w]ell, if that’s the case, then just forget about the doctor.” The trial court responded, ”[w]ell, it doesn’t work that way” and continued the case despite Appellant’s objection. The fact that Appellant later expressed an interest in resolving the case without a trial does not change the fact that Appellant personally made clear to the trial court his desire for a speedy trial, something the respondent in Taylor never did.

. On this point, it is noteworthy (and somewhat ironic in light of the analysis in the majority opinion) that had the State appealed the dismissal order, it likely would have been met with an argument that it invited the trial court's erroneous ruling on the motion to dismiss because the record reflects that, at the hearing on the motion, the prosecutor agreed with Appellant that the trial court was required by Osborne to grant the motion and release Appellant. Indeed, at no point below did the prosecutor argue that dismissal was improper because Appellant had waived his right to trial within the statutory period by requesting a continuance.

. The issue on appeal, as framed by Appellant in his brief, is: "[WHETHER] THE TRIAL COURT ERRED IN TRYING APPELLANT WHEN IT LACKED JURISDICTION TO PROCEED WITH THE CASE.”

. Judge Makar’s concurring opinion makes a compelling argument that Taylor is merely an "outlier” that should be "confined to its unusual facts and procedural posture” and that it "should not ... be read to permit compulsory release under facts like those presented here....” The problem, however, is that the holding in Taylor was not as narrow as Judge Makar suggests. The basis of the court’s decision to grant the writ of prohibition in Taylor had nothing to do with the length or propriety of the delay in the proceedings; rather, the decision was based on an express holding that the trial court lacked jurisdiction to proceed on the amended petition filed after the original petition was dismissed under Osborne because, at that point, the respondent was no longer in lawful custody. See Taylor, 65 So.3d at 536. That holding, if correct and still good law, squarely applies here and would require reversal.